SAMUEL SWAN, plaintiff in error, vs. THE STATE OF GEORGIA, defendant in error.

The penalties imposed by the Act of 23d December, 1833, "to prevent the drawing of lotteries, or sale of lottery tickets in this State, for a violation of its provisions, cannot be enforced by indictment.

Indictment, in Richmond Superior Court. Tried before Judge HOLT, April Term, 1859.

This was an indictment, founded on a presentment of the grand jury, for a violation of the laws of Georgia, in relation to lotteries.

Upon the call of the case for trial, defendant Swan moved to quash the indictment, upon the following grounds :

1st. Because the offence charged in the indictment, is not indictable by the laws of the State.

2d. Because the offence charged, if indictable at all, could not be prosecuted criminally by indictment founded on presentment, and without a prosecutor.

3d. Because the indictment did not set forth a crime known to the laws of this State.

4th. Because the indictment could not be supported under the Act of 1833, without a prosecutor.

The Court overruled the motion to quash upon all the grounds, and the defendant excepted.

In the progress of the trial, the defendant offered in evidence, assignments of the Sparta Academy Lottery, from the trustees of the Sparta Academy, to F. C. Barber, and from Barber to the defendant, the execution of said assignments having been first duly proven or admitted. The Court rejected the evidence, and the defendant excepted.

The defendant then offered in evidence the receipt of J. B. Trippe, Treasurer, and Peterson Thweatt, Comptroller General of the State of Georgia, for the payment of one thousand dollars as taxes to the State, under the Act of 11th

December, 1858, and also offered to prove that said sum of money was thus paid under a demand from the Governor of Georgia, and under a threat, to enforce the penalty of said Act, unless it should be so paid. The Court rejected the receipt and the proof offered, and the defendant excepted.

The Court, in charging the jury, read to them the Act of 1833, concerning lotteries, *down to the proviso,* and stated that it was the law of the case, and not his opinion ; omitting to read, at the same time, the proviso to the same Act, contained in the fourth section thereof, upon which the defendant had mainly rested his case. To this charge as given, and the omission to read said proviso, the defendant excepted.

The Court was requested in writing by defendant, to charge the jury, as set forth in the motion for a new trial, which requests to charge were refused or qualified as therein stated, to all which refusals to charge and qualifications of the charges requested, the defendant excepted.

The jury rendered a verdict of guilty. Whereupon, the defendant moved the Court for a new trial, upon the following grounds:

1st. Because the defendant requested the Court to charge, "that the Act of 1826, conferring upon the trustees of the Sparta Academy, and their successors, the right to raise five thousand dollars by lottery, having been passed before the Act of 1833, is excluded from its operation, and that, therefore, all drawings of a lottery, under and by virtue of that Act, are excluded from its operation ; and that no person, acting by authority from the trustees of the Sparta Academy, or their successors, in such drawing, can be found guilty of any crime under the laws of this State." Which charge was given, but with the qualification, " if the drawing conformed to the Act."

2d. Because the Court refused to charge as requested by defendant, "that it is not competent in this case to show whether or not other commissioners than those named in

said Act, (not being the defendant now on his trial,) superintended that lottery, nor does that fact in any wise affect the guilt or innocence of defendant."

3d. Because the Court refused to charge as requested by defendant, " that whether or not the parties, entitled by the Act of 1826, to draw said lottery, exercised that right in a manner different from that specified in the grant, is not a fact inquirable into in this case, and can in no wise affect the guilt or innocence of the defendant."

4th. Because the Court refused to charge as requested by defendant, " that if the defendant, in the opinion of the jury, acted *bona fide* and with an honest belief that he had a legal title to the franchise, and was legally authorized to use it, and did use it under color of right, by purchase, for the benefit of the Sparta Academy, the jury cannot convict him," and in lieu thereof, charged, "that intention is necessary to constitute crime, but that is to be inferred from action; that when men deliberately do a forbidden act, it is to be inferred that they intended to do it, and that a mistake in matter of law, as to its criminality, is no excuse for it."

5th. Because the Court refused to charge as requested by defendant, " that the Act of the 11th December, 1858, repealed and released all penalties or crimes against each manager of any lottery, authorized by the laws of this State, except the payment of a tax of one thousand dollars annually to the State Treasury, and repealed all previous penal laws, if any such existed against such manager."

6th. Because the Court erred in holding that the offence charged in the indictment is indictable by the laws of the State.

7th. Because the Court erred in holding that such offence, if indictable at all, could be prosecuted criminally by indictment founded on presentment, and without a prosecutor.

8th. Because the Court erred in holding that the indictment set forth a crime, known to the laws of this State.

9th. Because the Court erred in holding that the indict-

ment could be supported under the Act of 1833, without a prosecutor.

10th. Because the Court erred in reading to the jury, the Act of 1833, concerning lotteries, down to the proviso, and stating that it was the law of the case, and not his opinion, omitting to read at the same time, the proviso of the same Act, contained in the fourth section thereof, upon which the defendant had mainly rested his case.

11th. Because the Court erred in rejecting the assignments of the Sparta Academy Lottery, from the trustees of the Sparta Academy to F. C. Barber, and from Barber to the defendant.

12th. Because the Court erred in rejecting the receipt of J. B. Trippe, Treasurer, and Peterson Thweatt, Comptroller General of the State of Georgia, for the payment of $1,000 dollars as taxes to the State, under the Act of the 11th December, 1858 ; and also in refusing to admit evidence that it was so paid under a demand from the Governor of Georgia, and under a threat to enforce the penalty of said Act, unless *it should be so paid.*

13th. Because the verdict was contrary to law.

14th. Because the verdict was contrary to the evidence.

The presiding Judge refused the motion for a new trial, and defendant excepted.

MILLERS & JACKSON ; A. H. STEPHENS ; ROBERT TOOMBS ; O. A. LOCHRANE ; J. C. & C. SNEAD ; and E. J. WALKER, for plaintiff in error.

W. R. McLAWS ; and, Attorney General ROGERS, *contra.*

*By the Court.*—LYON J. delivering the opinion.

The plaintiff in error, Samuel Swan, was tried and convicted, in the Superior Court of Richmond county, on a bill of indictment, preferred against him on a special present-

ment of the grand jury, on the charge of being "concerned in the managing, conducting, carrying on, and drawing of a certain lottery, called the Sparta Academy Lottery, in the city of Augusta, said county and State; said lottery not being authorized by the General Assembly of the State of Georgia; and said lottery not being the Sparta Academy Lottery, authorized by the General Assembly of the State of Georgia, prior to the passage of the Act of said Assembly. passed the 23d day of December, 1833."

When the case was called, the plaintiff in error, by counsel, demurred to the bill of indictment, and moved the Court that it be quashed on three several grounds; all of which. may be considered in one, that is, that the bill of indictment contained no charge or offence that was indictable by the laws of Georgia. The Court refused the motion, and that is the first question for our consideration.

This proceeding originated under the Act of 23d December, 1833, "to prevent the drawing of lotteries, or sale of lottery tickets in this State," of which the following is a copy:

"Section I. From and immediately after the first day of May next, all and every lottery and lotteries, and device and devices in the nature of lotteries, shall be utterly and entirely abolished, and are hereby declared thenceforth unauthorized and unlawful.

Section II. From and after the day aforesaid, any person who shall sell, or expose to sale, or cause to be sold or exposed to sale, or shall keep on hand for the purpose of sale. or shall advertise or cause to be advertised for sale, or shall aid, or assist, or be in any wise concerned in the sale or exposure to sale of any lottery ticket or tickets, or any share or part of any lottery ticket, in any lottery or device in the nature of a lottery, within this State or elsewhere; and any person or persons who shall advertise, or cause to be advertised, the drawing of any scheme in any lottery, or be in any way concerned in the managing, conducting, carrying on, or drawing of any lottery, or device, in the nature of a lotte-

ry, or be an agent in procuring or supplying lottery tickets, and shall be convicted thereof, in any Court of competent jurisdiction, shall for each and every such offence, forfeit, and pay a sum not less than five hundred dollars, and not exceeding one thousand dollars, at the discretion of the Court, one-half to be paid to the prosecutor, and the other to be paid over to the county treasurer, for the use of the county where the offence may have been committed.

Section III. In all cases where the party shall be convicted as aforesaid, and shall fail or refuse to comply with the provisions in the second section of this Act, he, she, or they, shall be sentenced to undergo an imprisonment in the common jail of the county, not exceeding six months, at the discretion of the Court.

Section IV. All laws and parts of law, militating against this Act, are hereby repealed: Provided, that this Act shall not apply to any lottery heretofore authorized by the General Assembly."

As this Act is not incorporated in the penal code, and as there are no express words in the Act itself, making a violation of its provisions indictable as a crime, we are forced to a construction of the statute to get the sense of the Legislature, as to the manner in which the penalties of the Act, for a violation of its provisions, are to be enforced; and, if, according to those rules of construction for the interpretation of the intention of the Legislature in similar statutes, that Courts have heretofore adopted, and followed, it is not clearly manifest that the Legislature, in passing this Act, intended to make a breach of its provisions indictable as a crime, then we cannot hold that it is so.

To ascertain the intention of the Legislature, after examining the words of the Act itself, it is necessary to take into view every fact and circumstance that influenced its passage. We must consider what the law was before; the mischiefs against which the law did not provide; the nature of the remedy proposed; the true reason of the remedy.

The law on this subject, in existence previous to the passage of this Act, was the Colonial Act of 29th Feb., 1764, which enacts, " 1st. That from and after the passage of this Act, if any person or persons shall erect, set up, &c., to be played, drawn, &c., any lottery, &c., or shall make, print, advertise, or publish, &c., proposals or schemes, &c., or shall deliver out, &c., tickets to the persons advancing, &c., or shall expose to sale any houses, &c., by any game, method, &c., depending upon, or to be determined by any lot, &c., or shall be adventurers in, or pay any moneys or other consideration, or any ways contribute unto any of the said games, lotteries and sales, such person or persons, and every or either of them, *on being convicted thereof*, on the oath or oaths of one or more credible witness or witnesses, or on the confession of the party or parties, accused, shall forfeit and lose the sum of five hundred pounds, lawful money of this province, to be recovered by action of debt, or information in the general Court of Pleas, the one moiety of such forfeiture to be to his Majesty for the support of this province, and the other moiety to the informer: And in case of any offender against this Act, not having sufficient goods and chattels whereon to levy the penalty hereby inflicted, or not immediately paying the said penalty, or giving security for payment thereof, it shall and may be lawful for the Justices before whom such person or persons shall be convicted, to commit him or them to prison, there to continue and remain for any time not exceeding twelve months."

This Act, and that of 1833, having reference to the same subject matter, must be construed together; in fact, taken together they form but one law. The Act of 1764, not having been repealed in express terms, all of its provisions not in conflict with those of 1833, or the subsequent Act of 11th December, 1858, are still in force. Upon an examination of the Act of 1764, it will be seen that its penalties were directed against—1st. The persons who establish or set up a lottery: 2d. Persons who advertise or publish proposals or

schemes of lotteries: 3d. Persons selling or distributing tickets for chances in such lotteries: 4th. Those who expose to sale any property by lottery:· 5th. Persons who bought chances in, or in any way contributed to the lotteries. As sweeping and comprehensive as were these enactments, the Legislature did not think them sufficiently so, and by the Act of 23d December, 1833, extended its provisions, so as to embrace all persons who should "be in any way concerned in the managing, conducting, carrying on, or drawing of any lottery, or device in the nature of any lottery;" the clause under which defendant is indicted. Here was one object that the Legislature accomplished by the new law.

By the Law of 1764, the penalty imposed was five hundred pounds; one half to the informer, and the other to the State Treasury. The Act of 1833, reduced the penalty to a sum not less than $500, nor more than $1,000, in the discretion of the Court; one half to the informer, and the other to be paid into the county treasury.

Under the Act of 1764, the conviction of the offender, and recovery of the penalty, could only be had in the general Court of Pleas; by the Act of 1833, the conviction and recovery, could be had "in any Court of competent jurisdiction in this State."

Upon a conviction, for a violation of the provisions of the Act of 1764, in case the offender did not have sufficient goods to levy the penalty, and he would not give security for its payment, the Justices before whom the conviction was had, might imprison him not exceeding twelve months. The Act of 1833, required the Court to imprison the offender, upon his failure or refusal to pay the sentence of the Court, for any time not exceeding six months; thus negativing the idea, that the penalty might be collected by execution, or, that the defendant might give security for the payment of the judgment of the Court. These were important and beneficial changes, but all that the Legislature did make, leaving

the law to stand, with these exceptions, as it did before. Nothing whatever is said in the Act of 1833, of the form of conviction, except that it may be had "in any Court of competent jurisdiction." The Act of 1764, declares that the recovery shall be "by action of debt or information;" and this provision is not repealed. Take the two Acts together, (and we must do so, for they form one law, and but one on this subject,) and while the offence is distinctly created by the law, the particular method of proceeding, is as distinctly pointed out, and prescribed by the statute.

Now, did the Legislature intend, that the penalties imposed by the Act of 1833, should be enforced in the forms of proceeding prescribed by the Act of 1764? We think that it did, and for the following reasons:

1st. After this careful analysis of the Act of 1833, by the prescribed rules, we see various defects of the old law, that the Legislature intended to, and did, remedy by that Act, and the reasons why it did so; at the same time, we see no change whatever in the form of proceeding for the enforcement of the penalty, except in authorizing the proceedings to be had in any Court of competent jurisdiction, instead of the general Court of Pleas; that Court had ceased to exist; and that is the reason of this change. Hence, we conclude that this was all that the Legislature did intend to do by the Act of 1833; and that the penalties, of the Act of 1833, should be enforced as they had been theretofore required by the law to be done. We certainly see no intention on the part of the Legislature to substitute a criminal for a civil proceeding.

2d. As in the Act of 1764, one half the penalty imposed by that of 1833, goes to the informer; from which it is fair to infer, in the absence of any express words, that the Legislature expected, or intended that all action in the Courts on this subject would be instituted and prosecuted by some third person, by action of debt or *qui tam* proceeding, as in the former Act; and although, this is not sufficient of itself

to satisfy us, still it is a circumstance to show the inclination, at least, of the Legislature in passing the Act.

3d. The perfect silence of the Act of 1833, as to the form of proceeding, in which its penalties were to be enforced. Now, why was this?   It is not sufficient to say, that it was an oversight or omission; the Act of 1833, is too well considered, and carefully penned in all its parts, to admit of any such supposition.   But, if the Legislature supposed that the form of proceeding pointed out by the Act of 1764, was the proper one, and intended that it should be the remedy, then, that silence is accounted for.

4th. The Act of 1833, prescribes, that the conviction may be had "in any Court of competent jurisdiction."   If a proceeding by indictment was intended, this expression was inaccurate, for an indictment could be had in only one Court, the Superior Court, and we must give every word its full and appropriate meaning, and nothing else; but, if the Legislature intended that the penalty should be enforced by an action of debt, or *qui tam*, then, the expression was full and appropriate; for that form of proceeding could be pursued in the Inferior as well as the Superior Court.   This is a strong circumstance to show the intention of the Legislature.

5th. If the Legislature intended to make a violation of the provisions of this Act a crime, punishable by indictment, it is more than likely, that it would have been incorporated in and made part of the penal code, especially as the two Acts were passed during the same session, and assented to on the same day; and especially as that Act is entitled, "An Act to reform, amend and consolidate the penal laws of Georgia."

6th. The Legislature, on the 11th December, 1858, passed another Act, on this subject, as follows: " That every agent or other person selling lottery tickets, or other tickets of chance, not authorized by the laws of this State, shall be fined one hundred dollars for each offence, to be sued and

recovered in the Superior Courts of this State, in the county where the agent may reside, or in case of non-residence, where the tickets aforesaid may be sold; one-half to the informer, the other to the funds of the county where sued." Now, as this statute specifically prescribes the mode of enforcing the penalty, and the Act of 1764 does the same, while that of 1833 is silent as to the mode, and that part of the statute is now, and was in force at the passage of the latter Act, does it not follow, that the Legislature must have intended that the penalties of the Act of 1833, are to, or may be enforced by the mode pointed out. And, just here, it is as well to remark, that this statute answers nearly every argument drawn from the words of the Act of 1833, such as "convicted," "conviction," and "offence," "sentence," to show that the Legislature intended to make an indictable offence; for all these words, (except that of "convicted;" and that has always been used to express the result of the action of a Court as well in civil as in criminal cases,) are employed in this Act; and we will show before we conclude, that an indictment would not lie under that Act, or any of a similar character.

But it is objected, that this remedy is ineffectual, or cannot be enforced by action of debt, or a *qui tam* proceeding, because the penalty is discretionary with the Court. We see no difficulty in this, for if the jury find against defendant, their verdict can not be less than $500, and it may be $1,000, and if it be left with them, they would in this, as in all other questions of law, be under the direction of the Court. But we do not see why the jury should be embarrassed with the amount of the finding; their only verdict under this statute must be, for or against the defendant; that involves the whole issue. If it be against the defendant, then the Court, guided by the statutes, declares the amount defendant shall pay.

It is said again, that as imprisonment is the only means of enforcing the judgment of the Court, in which an informer

Swan vs. The State.

could have no interest, that it follows that the Legislature intended a criminal proceeding. To this, we reply, that the imprisonment prescribed is not for violating the Act, but for failing to pay the penalty. Then, the question arises, conceding that a different remedy is pointed out in the law, by which the penalties may be enforced: will an indictment lie for a violation of its provision, there being nothing in the Act, either authorizing or prohibiting it?

This offence not being prohibited by the common law; and not embodied in the penal code, but one created by a a statute, that points out a particular manner of proceeding against the offender, as an action of debt or information, without mentioning an indictment, it is settled that an indictment is not maintainable, because the mentioning the other methods of proceeding only, seem impliedly to exclude that of indictment. 2 *Haw. P. C.*, *ch.* 25, *sec.* 4. In *Rex. vs. Mead*, 1 *Burr*, 542, Lord Mansfield said: " In newly created offences, when there is a prohibitory, particular clause, specifying only particular remedies, then such particular remedy must be pursued. For otherwise, the defendant would be liable *to* a double prosecution; one upon the general prohibition, and the other upon the particular specific remedy."

But, aside from this direct authority, as we are to construe penal statutes, or such as work a forfeiture strictly; and as they are to reach no further in meaning than their words; and as too, all doubts concerning their interpretation are to preponderate in favor of the accused; how could we hold, that under this Act the defendant could be arraigned, tried, convicted and punished as a criminal, when there is absolutely nothing in the statute to warrant us in the belief, that the Legislature intended to impose on the offender any such infliction. If the Legislature intended that an offender against this enactment should be indicted under a criminal proceeding, it was easy to have said so, and as they have not said so, that is a sufficient answer to this proceeding.

· We think, therefore, that the Court ought to have sustained the motion to quash, and as this completely disposes of this case, we have not deemed it necessary to look into the other questions made by the record.

Judgment reversed.